

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH MARK HARRIS-BATTEN,

                      Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

Case No. 05-CV-7188 (KMK)(LMS)

ORDER ADOPTING REPORT &
RECOMMENDATION

---

KENNETH M. KARAS, District Judge:

      Joseph Mark Harris-Batten ("Plaintiff") brings this action against the Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge ("ALJ") to deny Plaintiff's application for disability insurance benefits. The Commissioner moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). The Court referred the case to Magistrate Judge Lisa Margaret Smith pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Magistrate Judge Smith issued a Report and Recommendation ("R&R") on April 8, 2010 (Dkt. No. 21), recommending that the Court grant the Commissioner's motion. Plaintiff filed objections to the R&R on May 3, 2010, which the Court considers here.

---

[1] Judge Colleen McMahon was originally assigned to this case. The case was reassigned to the Court on August 6, 2007. Judge McMahon referred the case to Magistrate Judge Smith. Magistrate Judge Smith filed an initial Report and Recommendation ("R&R") on August 5, 2008, recommending that the Court grant the Commissioner's motion to dismiss without prejudice for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b), as Plaintiff failed to file timely opposition to the Commissioner's motion to dismiss. (Dkt. No. 15.) Plaintiff filed objections to the R&R on August 14, 2008. The Court then issued an order referring the case back to Magistrate Judge Smith for consideration on the merits on August 13, 2008. (Dkt. No. 16.)

I. Discussion

A. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to a report and recommendation, as Plaintiff has done here, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. Further, the district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *See Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

Here, Plaintiff, proceeding pro se, objects to Magistrate Judge Smith's R&R.[2] In the objections, Plaintiff does not refer to any specific finding in the R&R. Although some courts have held that filing only general objections to a report and recommendation effectively waives

---

[2] Plaintiff's objection consists of a handwritten, three-page letter.

the right to make objections, *see, e.g., Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."); *Jackson v. Morgenthau*, No. 07-CV-2757, 2009 WL 1514373, at *1 (S.D.N.Y. May 29, 2009) (noting the same), the Second Circuit has not explicitly adopted such a rule. In addition, pro se pleadings are held to a less strict standard than those drafted by lawyers, *see Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)), and when considering pro se pleadings a court must construe them liberally and interpret them to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

Therefore, interpreting the language of the objections as broadly as possible, it appears that Plaintiff is objecting to Magistrate Judge Smith's determination that the Commissioner had substantial evidence to support the conclusion that Plaintiff was not disabled under 20 C.F.R. § 416.920(a)(4). Therefore, the Court reviews the R&R de novo.

The reviewing court's function is not to determine whether the plaintiff is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine *de novo* whether plaintiff is disabled.") (internal quotation marks omitted); *Riordan v. Barnhart*, No. 06-CV-4773, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled. . . ."); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled *de novo*."). The court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Rosa v. Callahan*, 168 F.3d 72, 77

(2d. Cir. 1999) (noting that a court will only overturn an ALJ's determination if it is "based upon legal error" or "not supported by substantial evidence" (internal quotation marks omitted)); *Morel v. Massanari*, No. 01-CV-0186, 2001 WL 776950, at *5 (S.D.N.Y. July 11, 2001) ("A court's review of the Commissioner's final decision is limited to determining whether there is 'substantial evidence' in the record to support such determination.").

To determine whether a claimant is entitled to disability benefits, the ALJ must follow the familiar five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(1); *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir.1999) (outlining the five steps). The ALJ initially must determine whether the claimant is currently engaged in substantial gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *Peterson v. Barnhart*, 219 F. Supp. 2d 491, 493 (S.D.N.Y. 2002). If the claimant is not so engaged, the ALJ considers whether the claimant has a severe impairment that limits the claimant's ability to participate in work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *Williams*, 204 F.3d at 49. If so, the ALJ determines whether the impairment is listed in 20 C.F.R. § 404.1520, Part 404, Subpart P, Appendix 1; if it is, disability is presumed, and the claimant is considered unable to perform substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). If the impairment does not meet or equal the criteria of a listed impairment, the ALJ must determine whether the claimant retains functional capacity to perform the claimant's past work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e)-(f). Where a claimant is thereafter deemed unable to perform the claimant's past work, the ALJ proceeds to the fifth step, which "requires the [ALJ] to determine whether there is other work within the national economy that the [claimant] is qualified to perform." *Peterson*, 219 F. Supp. 2d at 493; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g) (noting that the ALJ must show that there are other jobs existing based on the claimant's vocational factors, which include age, education, and work

4

experience, as well as the claimant's residual functional capacity). If the ALJ concludes that there is work in the national economy that the individual can perform, then the ALJ will determine that the individual is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.").

The claimant has the burden of proof for the first four steps, but the burden rests with the Commissioner as to the fifth step – the determination on alternative work. *See Peterson*, 219 F. Supp. 2d at 493; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the Commissioner is required to bear burden of proof at step five "only if the sequential evaluation process proceeds to the fifth step[,]" and for instance, "[i]f the process ends at step two, the burden of proof never shifts").

B. Analysis

The Court adopts the extensive recitation of facts set forth by Magistrate Judge Smith (R&R 1-13), and assumes the Parties' familiarity with the R&R, repeating only those facts relevant to the objections raised by Plaintiff.

The ALJ applied the five-step analysis as required by the statute. The Court construes Plaintiff's objections as disputing that there was substantial evidence to support the ALJ's conclusions at several of the steps, and the Court discusses each in turn.[3]

---

[3] It could be argued that Plaintiff's statement in his filing, "[t]he Activity in some of my Health care is Suspicious, as of the ALJ + commissioner of Social Security" (Dkt. No. 22), is the clearest statement of an objection. In determining whether the ALJ's finding was based on substantial evidence, this also could be construed as an objection to the ALJ's failure to give his testimony appropriate credibility.

With respect to the first step there is no argument that Plaintiff was not engaged in gainful employment at the time the application was considered. (Government's Administrative Record ("AR") 14.)

At step two, where the severity of the impairment is determined, the burden of proof is on the claimant. In this case, Plaintiff testified regarding several alleged impairments including depression, rectal bleeding, and impairments to his right leg and his right hand. (*Id.*)[4] The medical records, however, did not support a finding of severe psychiatric impairment. In fact, the medical records indicated the opposite, that Plaintiff was determined to be psychiatrically functional. (*Id.* at 102-03, 121, 124-27.) The ALJ also found that Plaintiff presented no objective evidence regarding a right leg or right hand impairment, other than his own allegations. To the contrary, the medical record showed, at most, mild, rather than severe, impairment regarding the right leg and hand. (*Id.* at 83-85.) Regarding the rectal bleeding, Plaintiff testified that he had been treated at Sloan Kettering, but did not submit any treatment records from there. (*Id.* at 16.)[5] The records submitted regarding rectal bleeding were from St. Lukes-Roosevelt Hospital and North General Hospital. (*Id.* at 88-95, 130.) In reviewing both hospitals' records, the ALJ determined that neither indicated that the condition constituted severe impairment. (*Id.* at 16)

The question before the Court, then, is whether there was substantial evidence to determine that Plaintiff had not met the burden of proof for his specific allegations of impairments, other than the clavicle fracture, at step two. Plaintiff's primary evidence for these

---

[4] Plaintiff did not testify at all regarding a back impairment. (AR 16.)

[5] Plaintiff does not have cancer. (AR 16.)

alleged impairments was his testimony. An ALJ has the discretion to evaluate the subjective testimony of a claimant in determining whether that claimant is entitled to disability benefits. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *Guzman v. Astrue*, No. 09-CV-3928, 2011 WL 666194, at *16 (S.D.N.Y. Feb. 4, 2011). The ALJ, however, is permitted to weigh that subjective testimony in light of the objective medical evidence, and, where appropriate, find that the claimant's allegations are not credible enough to sustain the burden of proof. *See Genier* 606 F.3d at 49 ("[The ALJ] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."). In this case, the ALJ did not find Plaintiff's testimony regarding his impairments credible when balanced against the medical records and the evaluations of several doctors regarding these impairments. (AR 17.) She determined that Plaintiff had not met his burden of proof with respect to those impairments (other than the clavicle fracture) alleged in his testimony. (*Id.* at 15-16.)

In considering whether the ALJ gave Plaintiff's testimony the appropriate weight, it is important to note that an ALJ's credibility finding is entitled to deference by the reviewing court. *See Gates v. Astrue*, 338 F. App'x. 46, 48 (2d Cir. 2009) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (second alteration in original) (quoting *Aponte v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984))); *Bundy v. Astrue*, No. 04-CV- 4150, 2011 WL 519439, at *8 (S.D.N.Y. Feb. 14, 2011) (same). The ALJ determined that Plaintiff's allegations were not credible due to inconsistencies in his statements regarding drug and alcohol use. In one instance, for example, Plaintiff claims that does not use alcohol or take drugs. (AR 175.) Yet, he provided the ALJ with medical records detailing

7

detoxification for alcohol dependency and cocaine abuse. (*Id.* at 135-148.)[6] The ALJ also found that Plaintiff's attitude and demeanor at the hearing undercut his credibility. (*Id.* at 17). Further, the ALJ found that Plaintiff's testimony regarding his functional limitations did not coincide with the medical records as a whole. (*Id.*) Based on a review of the entire record as summarized in the ALJ's report, it is the Court's determination that there was substantial evidence supporting the finding that Plaintiff did not have severe psychiatric impairment, severe impairment of the right leg or right hand, severe impairment due to rectal bleeding, or severe back impairment.

The ALJ did, however, determine that Plaintiff, as the result of a clavicle fracture, had an impairment of his right upper extremity, which did rise to the level of severe as defined by the regulation. (*Id.* at 16.) The impairment was not determined to be severe enough to meet or equal any of the impairments itemized in Appendix 1, Subpart P of 20 C.F.R. § 404.1520. (*Id.*) As this was the case, it was then the responsibility of the ALJ to proceed to step three of the analysis and determine Plaintiff's residual functional ability, if any. The ALJ took into account all relevant evidence of symptoms, including pain, consistent with the objective medical evidence. In this case, the medical reports indicated that Plaintiff could perform light work which did not require lifting his right arm above his shoulder.

Determining whether there was substantial evidence to support the ALJ's determination of Plaintiff's residual function capacity requires the same analysis. Here, again, the ALJ's finding was informed by, and consistent with, the examining consultant's opinion, the state agency expert's opinion, the medical records, and her own observations. (*Id.* at 16-17.) Specifically, the ALJ found that Plaintiff's residual capacity would allow Plaintiff to

---

[6] In fact, in the objections Plaintiff states "[m]y marijuana use is for many reasons . . . I am a smoker of the plant." (Dkt. No. 22.)

8

"lift[]/carry[] 20 pounds occasionally and 10 pounds frequently; stand[]/walk[] 6 hours/workday and perform[] the other functions of light work," with "no lifting with the right arm above the shoulder level." (*Id.* at 17.) In opposition to this evidence, Plaintiff offered only his subjective testimony that his functional capacity did not allow him to perform a significant range of light work. Plaintiff's allegations here suffer from the same lack of credibility, as did his allegations regarding his impairments. In reviewing the record as a whole, as well as the observations and report of the ALJ, the Court finds that the ALJ's determination that Plaintiff had the functional capacity to perform a significant range of light work was supported by substantial evidence.

Given this determination of Plaintiff's functional limitations, the ALJ proceeded to step five,[7] which requires the Commissioner to show that there are jobs existing in the national economy for which Plaintiff, considering his functional capacity, age, and work experience, is qualified to perform. The ALJ found that Plaintiff's age, 39 years old, placed him in the category of "younger individual" as defined in 20 C.F.R. § 416.963. (*Id.* at 18.) Plaintiff had a high school education. (*Id.*) Regarding previous work experience, Plaintiff had performed no past relevant work within the relevant time. (*Id.*) The ALJ, applying the Medical-Vocational Guidelines to Plaintiff's particular circumstances, found he could not perform all of the requirements of light work. (*Id.*) She did find, however, that Plaintiff could perform a significant range of light work as defined in the regulation. She then employed a vocational expert to determine if there were a significant number of jobs available in the national economy for which Plaintiff would be qualified. (*Id.* at 18-19.)

---

[7] Plaintiff had no relevant past work experience, so step four was inapplicable.

The ALJ elicited the testimony of a vocational expert who testified that a significant number of jobs existed in the national economy that Plaintiff could perform given his functional capacity as determined by the ALJ, a determination that was supported by substantial evidence. (*Id.* at 19.) Because the ALJ's determination of Plaintiff's residual functional capacity at step three was supported by substantial evidence, it was appropriate for this determination to be incorporated into the hypothetical questions posed to the vocational expert. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x. 109, 114 (2d Cir. 2010) (concluding that "the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment"). In response to those questions, the vocational expert testified that there were 10,926 jobs available locally and 389,781 nationally to which Plaintiff was capable of adjusting. (*Id.*) This testimony was properly relied upon in determining that Plaintiff was not disabled. *See Mancuso v. Astrue*, 361 F. App'x. 176, 179 (2d Cir. 2010) ("The Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir.1983))); *Butts*, 388 F.3d at 384 ("It is clear under our cases that the Commissioner could [] satisf[y] her burden at step five through a vocational expert's testimony that [the claimant] could engage in other work existing in the national economy.").

Finally, the Court agrees with Magistrate Judge Smith's recommendation that the case not be remanded for consideration of additional medical evidence provided by Plaintiff. The new evidence consists of two letters and four medical reports from a Dr. S. Ramachandran Nair. (Def's. Reply Mem. Ex. A.) One letter is dated November 11, 2005, but the remaining documents are from 2007 and 2008. These documents discuss Plaintiff's medical history, (*id.* at

10

2-12), including his non-united right clavicle, lacerated right thumb, shoulder pain, rectal bleeding, and right knee injury. These reports also contain contemporaneous statements about Plaintiff's pain, the limits of the use of his arm, and his ability to work. (*Id.* at 2 (noting that Plaintiff is "totally disabled for any kind of work at this time [5/21/08]." ), 3 (noting that Plaintiff "can't lift [right arm]," and that "patient in constant pain"), 10 (checking box indicating that Plaintiff is "[u]nable to work for at least 12 months"), 11 (Plaintiff unable to work since 1990), 13 (Plaintiff "only able to keep medical appointments").)

As Magistrate Judge Smith noted, a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). To satisfy these requirements, Plaintiff must show that: (1) the evidence is new and not merely cumulative of what is already in the record; (2) the evidence is material; and (3) good cause existed for his failure to present this evidence earlier. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir.1991) (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988)); *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (same); *Gonzalez v. Astrue*, No. 10-CV-3667, 2011 WL 4024707, at *12 (S.D.N.Y. Sept. 12, 2011) (same). To be material, the evidence must be "both relevant to the claimant's condition during the time period for which benefits were denied, and probative." *Lisa*, 940 F.2d at 43. In addition, "[t]he concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Id.* "'Good cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the [Commissioner's]

final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Id.* at 44.

While Plaintiff did not specifically object to Magistrate Judge Smith's determination that the new evidence did not justify a remand, the Court nonetheless has done a de novo review of her conclusion and agrees with Magistrate Judge Smith. First, the description of Plaintiff's medical troubles in the new reports is merely cumulative of what the record already revealed to the ALJ. For example, the statement about Plaintiff having limited use of his right arm was incorporated in the ALJ's ultimate decision. (AR 17 (noting the diagnosis that Plaintiff had "no lifting with the right arm above shoulder level").) The same is true of Plaintiff's complaints of other pain and his rectal bleeding. Notably, however, the new evidence offers nothing by way of a more serious diagnosis related to Plaintiff's pain and bleeding, i.e., no new limitations or diseases are identified. *See Rodriguez ex rel. Mena v. Astrue*, No. 10-CV-305, 2011 WL 2923861, at *13 (S.D.N.Y. July 7, 2011) (declining to remand case because additional medical evaluations did not "suggest that [claimant] has experienced any additional symptoms or conditions that are not already described in the record"); *cf. Pollard*, 377 F.3d at 193 (remanding case because claimant's condition "was far more serious than previously thought").

Second, most of the reports were prepared in 2007 and 2008, well after the time period during which Plaintiff was seeking disability benefits, and contain statements describing Plaintiff's medical condition at that time (which, as noted, had not materially changed from the medical records considered by the ALJ).[8] Thus, these reports provide no new information about

---

[8] There is a one-page report from 2005, noting that Doctor Nair had seen Plaintiff in June 2004 for rectal pain following a colonoscopy. (Def's. Reply Mem. Ex. A at 1.) However, the report notes what the ALJ noted, that Plaintiff was not suffering from any identified disease or ailment related to this pain, and in fact was diagnosed with "infected hemorrhoids." (*Id.*)

Plaintiff's medical condition or his ability to work during the time period for which he sought benefits. *See Brown v. Comm'r of Soc. Sec.*, 709 F. Supp. 2d 248, 258 (S.D.N.Y. 2010) (rejecting claim that new records should have been considered as they related to treatment provided "in 2005 and 2007 – many years after the period at issue [2001-2003]"); *Roman v. Barnhart*, 477 F. Supp. 2d 587, 600-01 (S.D.N.Y. 2007) (finding that new medical reports did not require remand where they merely described the claimant's medical condition at the time the reports were prepared, and did not offer any new information about the claimant's condition during the relevant time period).[9] Thus, there is no reason to believe that the Commissioner would have reached a different conclusion based on these reports. *See Di Paolo v. Barnhart*, No. 03-CV-0175, 2005 WL 503934, at *3 (E.D.N.Y. Jan. 26, 2005) (noting that to the extent the new medical information was non-cumulative, it was not enough to believe that the Commissioner would have decided the benefits application differently).

Finally, Doctor Nair's statements that Plaintiff could not work are not material. Indeed, those statements only reflect Doctor Nair's belief that Plaintiff could not work at that time (2007-2008). By itself, such a conclusion says nothing about Plaintiff's capacity to work back in 2003-2004. *See Fortier v. Astrue*, No. 09-CV-993, 2010 WL 1506549, at *22 (S.D.N.Y. Apr. 13, 2010) (noting that statements that claimant could not work at the time of a later evaluation were not material). Nor should any weight be given to Doctor Nair's comment that Plaintiff had

---

Moreover, this report says nothing new about Plaintiff's other ailments, which were discussed at length in the ALJ's decision.

[9] Of course, the Court recognizes that evidence of the nature of a claimant's medical condition after the pertinent time period may bear on the severity of the condition during the pertinent time period. *See Pollard*, 377 F.3d at 193-94. However, where the "new" evidence does not suggest any material change in the condition, then there is less likelihood that the "new" evidence would have changed the Commissioner's determination.

not worked since he first suffered his injuries in 1990. That undisputed statement merely begs the question as to whether Plaintiff should have received disability benefits during the earlier time frame, and therefore does not require a remand in this case. *See id.* (noting that doctor's statements about claimant's inability to perform work during the relevant time period were not material as they only related to the claimant's former work activity). Moreover, as noted, the summary conclusion of Doctor Nair does not appear to be based on any new diagnosis of what might have ailed Plaintiff during the relevant time period, and otherwise is not supported by the records provided by Plaintiff's other treating physicians, whose records were considered by the ALJ.[10] And, because the Commissioner bears the ultimate responsibility to determine a claimant's ability to work, these summary statements (provided years after the relevant period) are not entitled to any deference and are therefore not material in this case. *See* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'"); *Fortier*, 2010 WL 1506549, at *22 (dismissing statements by treating physician, based on an evaluation of claimant after the relevant time period, about claimant's ability to work).

---

[10] Plaintiff does not claim, nor could he credibly claim, that the ALJ failed to fulfill her obligation to develop the record. Plaintiff never identified Doctor Nair as a treating physician, and the record indicates that the ALJ sought treating source evidence from the hospitals identified by Plaintiff as sources in his benefits application. (AR 52, 54, 88-89, 115-50, 160-68.) Indeed, the record contains copies of subpoenas the ALJ issued to each of these sources. (*Id.* at 16, 77, 78, 123, .) Thus, the record was fully developed in this case.

## II. Conclusion

For the foregoing reasons, it is hereby

ORDERED that the Report an Recommendation dated April 8, 2010 is adopted in its entirety. It is further

ORDERED that the Commissioner's motion is GRANTED. It is further

ORDERED that the Clerk of Court is respectfully requested to close the case.

SO ORDERED.

Dated:   February 8, 2012
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15

Service List (by Mail Clerk's Office):

Joseph Mark Harris-Batten
196 Bradhurst Avenue, Apt 8
New York, NY 10039-1412
*Pro Se*

Leslie A. Ramirez-Fisher, Esq.
Susan Branagan, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-0378
(212) 637-2804
Email: leslie.ramirez-fisher@usdoj.gov
Email: susan.branagan@usdoj.gov
*Counsel for Defendant*